ROBERT LESLIE STOCKMEIER, Appellant, *v.* NEVADA DEPARTMENT OF CORRECTIONS PSYCHOLOGICAL REVIEW PANEL, Respondent.

No. 41529

April 27, 2006                                          135 P.3d 220

*Robert Leslie Stockmeier*, Lovelock, in Proper Person.

*George Chanos*, Attorney General, and *Kelly S. Werth*, Deputy Attorney General, Carson City, for Respondent.

Before Rose, C. J., Douglas and Parraguirre, JJ.

## OPINION

*Per Curiam:*

In this proper person appeal, we decide whether prisoners have standing to file suit regarding violations of the open meeting law, NRS Chapter 241, that occur before and during Psychological Review Panel hearings under NRS 213.1214. Appellant Robert Stockmeier is an incarcerated sex offender. As a sex offender, before he can be released on parole he must receive certification from the

Psychological Review Panel (the Psych Panel) that he does not represent a high risk to reoffend. The Psych Panel allegedly violated various open meeting law provisions at Stockmeier's Psych Panel hearing, including a lack of adequate notice before the hearing, a deficient agenda, and an improperly conducted closed meeting. The district court did not reach the merits of these allegations, finding that Stockmeier did not have standing to assert open meeting law rights and that, even if he did, the Psych Panel hearing was a judicial proceeding that was exempt from the open meeting law. This appeal followed.

We conclude that Psych Panel hearings do not qualify as judicial proceedings; thus, they are subject to the open meeting law. We also conclude that federal constitutional standing is inapplicable to the open meeting law and that prisoners do have standing under NRS 241.037(2) to assert certain open meeting law violations. In general, prisoners' open meeting law rights are limited. However, in the instant case, Stockmeier attended and was the subject of the Psych Panel hearing. Therefore, we conclude that Stockmeier can seek redress under the open meeting law for the Psych Panel's alleged failure to provide him with adequate notice and its failure to comply with the open meeting law's requirements for a closed meeting, the public notice, and the publicly posted hearing agenda. We further conclude that Stockmeier's complaint alleges sufficient facts, which, if true, may entitle him to relief on his claims that the Psych Panel violated the closed meeting provisions of the open meeting law. Therefore, we reverse the district court's order and remand this case to the district court for further proceedings.

## FACTS

Appellant Robert Stockmeier is a sex offender currently incarcerated at the Lovelock Correctional Facility. As a sex offender, Stockmeier must receive certification from the Psych Panel before he can be released on parole. Stockmeier was the subject of a Psych Panel hearing in December 2002. Before the hearing, he received a copy of the hearing agenda. The agenda informed him of the time and place of his hearing; that the Psych Panel would meet in a closed session "to consider [his] character, mental health, and alleged misconduct" before opening up for public comment, deliberation, and decision; and that the Psych Panel would consider whether to certify Stockmeier for parole under NRS 213.1214. The agenda did not disclose that the Psych Panel would hear comment during the closed session from the victim and the victim's family regarding new abuse allegations or that the Psych Panel would consider that information when deciding whether to certify Stockmeier.

When the Psych Panel hearing began, the Psych Panel closed the hearing to the public under NRS 241.030 to consider Stockmeier's character, mental health, and alleged misconduct. During the closed session, the victim and the victim's family were admitted and allowed to speak. They commented to the Psych Panel about the impact of Stockmeier's offenses on their lives, stated their belief that they were in danger should Stockmeier be released, and asserted that the victim had recently remembered additional acts of physical abuse. Because the victim had never before alleged those acts, those alleged acts were not included in the presentence investigation report and they have never been adjudicated. The Psych Panel then dismissed the victim and the victim's family and interviewed Stockmeier, questioning him regarding his conviction and the victim's most recent allegations. Stockmeier admitted to the crimes for which he was convicted, but he denied committing the new, uncharged acts. The Psych Panel then dismissed Stockmeier and deliberated during the remainder of the closed session.

When the Psych Panel opened the meeting to the public, it did not permit additional public comment and did not further deliberate. It announced its decision declining to certify Stockmeier, noting, among other issues, that he denied accountability for the uncharged physical abuse. The Psych Panel provided the following explanation in its minutes:

> Panel notes unsatisfactory performance in all Criteria. Panel notes inmates [sic] Accountability to crime, but denies some of the physical abuse to victim. Panel notes Antecedents and Victim/Crime Impact as needing more work. Panel also notes Actuarial/Risk factors and suggest inmate further program with Substance Abuse counseling and Sex Offender treatment.

By Consensus:    Not Certified

In the district court, Stockmeier, proceeding in proper person, challenged as violations of the open meeting law the notice he received, the comments of the victim during the closed session, and the Psych Panel's consideration of the new physical abuse allegations. He sought "declaratory relief," declaring that the Psych Panel violated NRS Chapter 241 and that the meeting held in December 2002 was void; injunctive relief requiring the Psych Panel to comply with NRS Chapter 241; and costs.

The Psych Panel filed an NRCP 12(b)(5) motion to dismiss, which the district court granted. The district court first determined that Stockmeier did not have constitutional standing to assert open meeting law violations. It then held that prisoners cannot conduct the people's business and, therefore, cannot assert open meeting law violations. The district court finally held that Psych Panel

hearings are exempt from the open meeting law as judicial proceedings. Stockmeier challenges these findings on appeal.[1]

## DISCUSSION

An order granting a motion to dismiss under NRCP 12(b)(5) for failure to state a claim is subject to a rigorous standard of review on appeal.[2] We must regard all factual allegations in the complaint as true and must draw all inferences in favor of the nonmoving party.[3] "A complaint should only be dismissed if it appears beyond a reasonable doubt that the plaintiff could prove no set of facts, which, if true, would entitle him to relief. Dismissal is proper where the allegations are insufficient to establish the elements of a claim for relief."[4] "[T]he district court's conclusions of law are reviewed de novo."[5]

Stockmeier alleges that the Psych Panel violated the open meeting law by providing deficient notice, not following its agenda, failing to follow the correct procedure to enter into a closed meeting, allowing the victim and the victim's family into the closed portion of the hearing and by considering their statements, deliberating behind closed doors, and considering the new allegations in its decision. Stockmeier's arguments require us to review several sections of the open meeting law, NRS Chapter 241.

In order for Stockmeier to assert that the Psych Panel violated the open meeting law, a Psych Panel hearing must be subject to the law. The Psych Panel argues that, under NRS 241.030(3)(a),[6] its hearings are exempt from the open meeting law as judicial proceedings.[7] However, as the Psych Panel is not part of the judiciary,

---

[1]Stockmeier also asserts that a conflict of interest exists because the Attorney General is defending the Psych Panel in this case but is also required to assist Stockmeier in his lawsuit under NRS 241.037 and NRS 241.040(4). This contention is without merit. NRS 241.037 and NRS 241.040(4) do not create an attorney-client relationship with persons who complain to the Attorney General about an open meeting violation, nor do they require the Attorney General to assist such persons in lawsuits filed under NRS 241.037(2). Thus, no conflict of interest exists in this case.

[2]*Hampe v. Foote*, 118 Nev. 405, 408, 47 P.3d 438, 439 (2002).

[3]*Id.*

[4]*Id.* (citation omitted).

[5]*Keife v. Logan*, 119 Nev. 372, 374, 75 P.3d 357, 359 (2003).

[6]NRS 241.030(3)(a) (2002) was amended in 2005 and replaced by NRS 241.030(4)(a) (2005). Aside from the subsection change, the Legislature did not alter the judicial proceeding exception. We refer to the judicial proceeding exception as NRS 241.030(3)(a) in this opinion.

[7]The Psych Panel argues that NRS 213.130 supersedes the open meeting law's application to NRS 213.1214. NRS 213.130 provides for open meetings in parole eligibility proceedings. This argument is without merit. The open

a Psych Panel hearing is, at best, a quasi-judicial proceeding. A quasi-judicial proceeding is sufficiently akin to a judicial proceeding to render it exempt from the open meeting law. Therefore, we must first address whether the Psych Panel hearing is a quasi-judicial proceeding exempt under the statute.

## The Psych Panel hearing was not a quasi-judicial proceeding

Quasi-judicial proceedings are those proceedings having a judicial character that are performed by administrative agencies.[8] This court has held that an administrative body acts in a quasi-judicial manner when it refers to a proceeding as a trial, takes evidence, weighs evidence, and makes findings of fact and conclusions of law.[9] We have also held that "the taking of evidence only upon oath or affirmation, the calling and examining of witnesses on any relevant matter, impeachment of any witness, and the opportunity to rebut evidence presented against the employee" was "consistent with quasi-judicial administrative proceedings."[10] Each administrative tribunal in these cases "act[ed] in a quasi-judicial capacity [because] it afford[ed] the parties substantially the same rights as those available in a court of law, such as the opportunity to present evidence, to assert legal claims and defenses, and to appeal from an adverse decision."[11]

Other courts have also required similar protections for an administrative proceeding to be deemed quasi-judicial. In Arizona, the procedures followed by the Board of Tax Appeals included "hearing the parties in open forum, taking the matter under advisement, deliberating, writing a written decision, and making that decision available to the parties and to the public."[12] The Arizona Supreme Court concluded that these procedures created a judicial proceed-

---

meeting provisions of NRS 213.130 apply only to parole hearings under that statute.

Similarly, the Psych Panel's argument that the doctrine of *expressio unius est exclusion alterius* (the mention of one is the exclusion of the other) exempts it from the open meeting law is also without merit. The open meeting law applies to meetings of all public bodies unless otherwise specified by statute. NRS 241.020(1).

[8]*Black's Law Dictionary* 1278-79 (8th ed. 2004).

[9]*Van Heukelom v. State Board*, 67 Nev. 649, 655-56, 224 P.2d 313, 316 (1950). In light of our discussion today, we leave unanswered the question of whether other state agencies' hearings are quasi-judicial proceedings.

[10]*Knox v. Dick*, 99 Nev. 514, 518, 665 P.2d 267, 270 (1983).

[11]*Town of Richmond v. Wawaloam Reservation*, 850 A.2d 924, 933 (R.I. 2004).

[12]*Arizona P. C., Inc. v. Arizona Bd. of Tax Ap., Div. 1*, 558 P.2d 697, 699 (Ariz. 1976), *superseded by statute as recognized by Rosenberg v. Arizona Bd. of Regents*, 578 P.2d 168, 173 (Ariz. 1978) (concluding that the Arizona Legislature later amended Ariz. Rev. Stat. § 38-431.08.A(1) to exclude quasi-judicial proceedings from the exception).

ing that fell within an open meeting law statute exception identical to NRS 241.030(3)(a).[13] Similarly, the United States Court of Appeals for the Seventh Circuit has defined a quasi-judicial proceeding as one that

> provides the following safeguards: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law.[14]

Under its own open meeting law, Vermont has also defined a quasi-judicial proceeding as

> a case in which the legal rights of one or more persons who are granted party status are adjudicated, which is conducted in such a way that all parties have opportunity to present evidence and to cross-examine witnesses presented by other parties, which results in a written decision, and the result of which is appealable by a party to a higher authority.[15]

These definitions center on the basic protections that litigants receive from a trial. To achieve a fair result, each party is allowed to present evidence supporting his side of the story and has the ability to challenge the other party's witnesses to reveal discrepancies in their testimony. A written decision allows the parties to see why the public body ruled the way it did, and the public body is held accountable through the ability to appeal. Without these basic adversarial procedures, a proceeding could be unfair and unreliable.

This is exactly what the open meeting law was enacted to prevent. The Legislature enacted the open meeting law "to aid in the conduct of the people's business. It is the intent of the law that [public bodies'] actions be taken openly and that their deliberations be conducted openly."[16] Thus, the Legislature has required that meetings of public bodies be thrown open to the public so that the persons making the decisions can be held accountable. The very purpose of the open meeting law would be circumvented if public bodies were allowed to avoid the open meeting law by claiming that a proceeding was a judicial proceeding without providing the basic protections of a trial. At a minimum, a quasi-judicial proceeding must afford each party (1) the ability to present and object to evidence, (2) the ability to cross-examine witnesses, (3) a written de-

---

[13]*Id.*

[14]*Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1300 (7th Cir. 1992).

[15]Vt. Stat. Ann. tit. 1, § 310(5)(B) (2003).

[16]NRS 241.010.

cision from the public body, and (4) an opportunity to appeal to a higher authority.

In this case, the Psych Panel's actions were not quasi-judicial proceedings. The Psych Panel acted to "certif[y] that the prisoner was under observation while confined in an institution of the Department of Corrections and does not represent a high risk to reoffend based upon a currently accepted standard of assessment."[17] The certification involved holding a hearing to receive input from the Department of Corrections, the prisoner's victims, the public, and the prisoner; questioning the prisoner; and then deliberating and rendering a decision on whether the prisoner represents a high risk to reoffend. At no time was Stockmeier able to cross-examine the witnesses or call witnesses on his own behalf. The Psych Panel does not issue a detailed, written decision,[18] and the prisoner cannot appeal the Psych Panel's decision. Therefore, we conclude that the Psych Panel hearing is not exempt under the judicial proceeding exception and is subject to the open meeting law. Consequently, we must next address whether Stockmeier may assert violations of the open meeting law against the Psych Panel. The first inquiry is whether Stockmeier has standing to enforce the open meeting law.

*Standing to assert open meeting law violations*

The district court determined that Stockmeier lacked standing to assert violations of the open meeting law. It based its holding on the constitutional standing requirements of injury, causation, and redressability as set forth in *Lujan v. Defenders of Wildlife*.[19] However, as those standing requirements arise from the "case or controversy" requirement of the United States Constitution, they do not necessarily provide the standing threshold for Nevada courts. We disagree that Stockmeier must satisfy federal constitutional standing to assert violations of the open meeting law.[20]

The United States Supreme Court explained that *Lujan*'s standing requirements protect the limited jurisdiction of the federal

---

[17]NRS 213.1214(1).

[18]While the Psych Panel did issue a written statement, an eight-line conclusory statement noting Stockmeier's unsatisfactory performance is not enough to constitute a formal written decision.

[19]504 U.S. 555, 560-61 (1992).

[20]The district court's reliance on the standing requirements in *Lujan* may stem from Stockmeier's complaint seeking declaratory relief. However, declaratory relief is inapplicable to Stockmeier's claims, as he is seeking (1) a remedy for violations of his rights that have already occurred, and (2) injunc-

courts arising under the "case or controversy" requirements of Article III of the United States Constitution.[21] Under the "case or controversy" requirement, the federal judiciary cannot declare the rights of individuals or "determine the constitutionality of legislative or executive acts" without an "actual controversy" between the parties.[22]

However, state courts are not required to comply with the federal "case or controversy" requirement. "[S]tanding is a self-imposed rule of restraint. State courts need not become enmeshed in the federal complexities and technicalities involving standing and are free to reject procedural frustrations in favor of just and expeditious determination on the ultimate merits."[23] State courts are free to adopt a "case or controversy" justiciability requirement or open their courts to lawsuits that may not meet this requirement.[24]

This court has a "long history of requiring an actual justiciable controversy as a predicate to judicial relief."[25] In cases for declaratory relief[26] and where constitutional matters arise,[27] this court has required plaintiffs to meet increased jurisdictional standing requirements. However, where the Legislature has provided the people of Nevada with certain statutory rights, we have not required constitutional standing to assert such rights but instead have examined the language of the statute itself to determine whether the plaintiff had standing to sue.[28] To do otherwise would be to bar the

---

tive relief to address future violations. Therefore, we do not address declaratory relief.

[21]504 U.S. at 560.

[22]*Valley Forge College v. Americans United*, 454 U.S. 464, 471 (1982).

[23]59 Am. Jur. 2d *Parties* § 36, at 441-42 (2002) (footnote omitted); *see Secretary of State v. Nevada State Legislature*, 120 Nev. 456, 461 n.3, 93 P.3d 746, 749 n.3 (2004).

[24]59 Am. Jur. 2d *Parties* § 36, at 441-42 (2002); *see, e.g., Life of the Land v. Land Use Com'n, Etc.*, 623 P.2d 431, 436-41 (Haw. 1981) (finding that the Article III standing restrictions of the United States Constitution do not apply to Hawaii); *Ohio Roundtable v. Taft*, 773 N.E.2d 1113, 1120-23 (Ohio Ct. Com. Pl. 2002) (allowing standing for a public right). *But see City of West Linn v. LCDC*, 113 P.3d 935, 937-38 (Or. Ct. App. 2005) (holding that both statutory and constitutional standing were required to enforce a statute).

[25]*Doe v. Bryan*, 102 Nev. 523, 525, 728 P.2d 443, 444 (1986); *see* NRS Chapter 30 (Uniform Declaratory Judgments Act).

[26]*See Doe*, 102 Nev. at 525-26, 728 P.2d at 444-45.

[27]*See Sereika v. State*, 114 Nev. 142, 151, 955 P.2d 175, 180 (1998); *Worldcorp v. State, Dep't Tax.*, 113 Nev. 1032, 1036, 944 P.2d 824, 827 (1997).

[28]*See Hantges v. City of Henderson*, 121 Nev. 319, 322-23, 113 P.3d 848, 850 (2005) (standing under NRS 279.609); *RTTC Communications v. Saratoga Flier*, 121 Nev. 34, 39-40, 110 P.3d 24, 27 (2005) (standing under NRS 80.055).

people of Nevada from seeking recourse in state courts whenever the Legislature has provided statutory rights that are broader than constitutional standing would allow.

In the present case, NRS 241.037(2) provides that "[a]ny person denied a right conferred by [NRS Chapter 241] may sue." The Legislature has indicated in the statute who has standing to sue. Therefore, we conclude that constitutional standing under *Lujan* is not applicable to a person asserting injury under the open meeting law, and the correct inquiry to determine whether Stockmeier has standing to sue is whether he qualifies as "[a]ny person denied a right conferred by" the open meeting law.

### The definition of "person" in the open meeting law

The Psych Panel argues that Stockmeier is not a "person" who may sue under NRS 241.037(2) because he cannot conduct the people's business while he is incarcerated. We disagree. The Legislature has not limited the meaning of "person" as the Psych Panel suggests.

NRS 241.037(2) provides in relevant part that "[a]ny person denied a right conferred by this chapter may sue." A "person" is defined as "[a] human being," a "natural person," or "[a]n entity . . . that is recognized by law."[29] The meaning of "person" is plain and not subject to multiple interpretations, so we do not look beyond the face of the statute.[30] Furthermore, "person" is modified by "any," which does not limit "person," but demonstrates the Legislature's intent to provide a broad right to sue.[31]

This interpretation of "any person" complements the purpose of the open meeting law as stated in NRS 241.010, which provides that "all public bodies exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly." The statute was enacted to open the people's business—the government—to public scrutiny. A more restrictive interpretation of "any person" would have the opposite effect, shrinking the pool of people who could sue under the statute and obscuring the actions of public bodies. The public interest in the operation of the government requires a broad interpretation.[32]

---

[29]*Black's Law Dictionary* 1178 (8th ed. 2004).

[30]*State v. Quinn*, 117 Nev. 709, 713, 30 P.3d 1117, 1120 (2001).

[31]*See Kaapu v. Aloha Tower Development Corp.*, 846 P.2d 882, 888-89 (Haw. 1993) (determining that "any person" in Hawaii's open meeting law was equally as broad).

[32]*Id.*

Stockmeier, as a human being, plainly falls within the definition of "any person." Stockmeier's status as a convicted felon who is currently incarcerated in Nevada's prisons does not change this result. Therefore, we conclude that Stockmeier is a "person" who can sue under NRS 241.037(2). However, as a convicted felon, Stockmeier's rights are limited.[33] Stockmeier must have been "denied a right" under the open meeting law in order to maintain his suit.

*Prisoners' open meeting law rights*

While we reject the Psych Panel's argument that Stockmeier is not a "person" who can sue under NRS 241.037(2), its argument that Stockmeier cannot conduct the people's business is more persuasive in determining whether Stockmeier, as an incarcerated prisoner, has rights under the open meeting law.

The purpose of the open meeting law is to open the actions of public bodies to the public. Attendance by the public helps to ensure the integrity of public bodies' proceedings and that differing points of view are considered during such proceedings. In furtherance of those objectives, the open meeting law provides that "[e]xcept as otherwise provided by specific statute, . . . all persons must be permitted to attend any meeting of these public bodies."[34]

Prisoners, however, are not free to attend meetings because they are incarcerated. When the people of Nevada convict a person of certain crimes, his liberty to freely move about is restricted by incarceration, as provided by statute. As a result, we conclude that incarceration generally deprives prisoners of certain rights provided by the open meeting law.[35]

Thus, prisoners cannot take advantage of the open meeting law to attend a public meeting under NRS 241.020(1). Similarly, prisoners are not free to view any publicly posted notice as required by NRS 241.020(3). As a result of not being able to freely attend

---

[33]*E.g.*, Nev. Const. art. 2, § 1 (felons cannot vote); *id.* art. 4, § 27 (persons convicted of "high crimes" cannot serve as jurors); *Arterburn v. State*, 111 Nev. 1121, 1124 n.1, 901 P.2d 668, 670 n.1 (1995) (recognizing that Nevada's statutes limit a felon's rights, including the right to carry a firearm and the right to obtain certain professional licenses); *see* NRS 213.155 (restoring civil rights to convicted criminals after parole).

[34]NRS 241.020(1).

[35]While prisoners should be afforded the tools to "attack their sentences" and "challenge the conditions of their confinement," "[i]mpairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). The impairment of Stockmeier's rights under the open meeting law is an incidental consequence of incarceration.

meetings or view a notice, prisoners cannot personally sue, under NRS 241.037(2), regarding any open meeting law violations that occurred at a meeting they were not able to attend or in a public notice they were not able to view.

But prisoners are not deprived of all rights under the open meeting law. The provisions of the open meeting law discussed above require admission of, or actions of public bodies pertaining to, the general public. Others require action toward a specific individual. Because of their incarceration, prisoners are not able to take advantage of those provisions pertaining to the general public, but they may take advantage of sections of the open meeting law imposing duties on public bodies toward individuals.

For example, there is no reason why a prisoner, via any allowed method of communication, cannot request an agenda or other material from a public body under NRS 241.020(5). Similarly, if a public body is holding a closed meeting to consider the "character, alleged misconduct, professional competence, or physical or mental health of any person,'' including a prisoner, NRS 241.033 requires the public body to give that person notice of the meeting. A prisoner could also seek to enforce a public body's open meeting law obligations toward meeting attendees at a meeting that he attended. Where the prisoner attends and is also the subject of the meeting, he could also seek to enforce the open meeting law's open meeting and public notice requirements to ensure a fair proceeding.

In the present case, Stockmeier attended a Psych Panel hearing. The Psych Panel was required to give Stockmeier notice under NRS 241.033 because it intended to hold a closed session regarding his character, alleged misconduct, or mental health. Stockmeier can, therefore, maintain a suit on whether the notice provided to him complied with NRS 241.033. As he attended the Psych Panel hearing, Stockmeier can also maintain a suit regarding whether the Psych Panel held a valid closed session, or whether irregularities at the meeting itself violated any section of the open meeting law. As Stockmeier was also the subject of the Psych Panel hearing, he can, to ensure basic fairness, maintain a suit regarding whether the meeting was open to the public under NRS 241.020(1), or whether the publicly posted notice and agenda complied with NRS 241.020(2)-(3)(a). Therefore, the claims that Stockmeier validly asserts include whether he received adequate notice of the closed meeting under NRS 241.033, whether the Psych Panel held a valid closed meeting under NRS 241.030, whether the Psych Panel posted adequate public notice under NRS 241.020(3), and whether the Psych Panel's posted hearing agenda complied with the open meeting law under NRS 241.020(2).

*Notice given to Stockmeier under NRS 241.033*

Stockmeier argues that he was not given adequate notice that his character, alleged misconduct, or mental health would be considered in a closed meeting because the notice he received did not contain a detailed agenda and did not adequately define "under observation," "currently accepted standards of assessment," or "character, mental health, and alleged misconduct of the prisoners." While the notice did not need to define these terms, it did need to provide Stockmeier with some notice of what particular misconduct the Psych Panel will be considering.

At the time when Stockmeier's 2002 Psych Panel hearing was conducted, NRS 241.033(1) provided in relevant part that "[a] public body shall not hold a meeting to consider the character, alleged misconduct, professional competence, or physical or mental health of any person . . . unless it has [g]iven written notice to that person of the time and place of the meeting." The basic requirements of the notice are time and place designation. The statute's notice requirement implies that the notice state that the meeting will be closed to consider the person's "character, alleged misconduct, professional competence, or physical or mental health."[36] Also implied in the notice requirement is some basic indication of what aspects of character, mental health, or alleged misconduct will be considered. Without some reasonable specificity regarding these items, a person will not be able to adequately prepare and contribute to the meeting and may be ambushed with serious allegations, as Stockmeier was here.[37]

As alleged in his complaint, the notice Stockmeier claims to have received simply provided the time and date of the Psych Panel hearing and recited that the Psych Panel would have a closed meeting under NRS 241.030 to consider his "character, alleged misconduct, professional competence, or physical or mental health." The notice did not provide Stockmeier with notice that misconduct beyond the crime for which he was convicted, especially new allegations of abuse, would be considered. Therefore, if this was in fact the notice Stockmeier received, we conclude that the notice did not comply with NRS 241.033. Further evidence will need to be elicited in the district court to judge the accuracy of Stockmeier's complaint.

---

[36]NRS 241.033(1).

[37]Stockmeier's hearing was in December 2002. In 2005, the Legislature amended the statute to require notice that includes "[a] list of the general topics concerning the person that will be considered by the public body during the closed meeting." NRS 241.033(2)(c)(1). Our holding here is consistent with this amendment.

## CONCLUSION

We conclude that the Psych Panel hearing is not an exempt quasi-judicial proceeding and is therefore subject to the open meeting law. Moreover, Stockmeier is a "person" under NRS 241.037(2) and is not required to meet the federal constitutional standing requirements of *Lujan*. We also conclude that prisoners forfeit some open meeting law rights while incarcerated. However, because Stockmeier attended and was the subject of the Psych Panel hearing, he validly asserts open meeting law claims, including whether he received adequate notice of the closed meeting under NRS 241.033, whether the Psych Panel held a valid closed meeting under NRS 241.030, whether the Psych Panel posted adequate public notice under NRS 241.020, and whether the Psych Panel's posted hearing agenda complied with the open meeting law under NRS 241.020. Additional facts need to be developed in district court to fully analyze whether the Psych Panel did indeed violate the open meeting law.

Accordingly, we reverse the judgment of the district court and remand this case for further proceedings consistent with this opinion.